IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY HUGHES | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 23-2186 |
| CITY OF PHILADELPHIA, et. al. | : | |

<u>**MEMORANDUM**</u>

**Chief Judge Juan R. Sánchez**                                                                                     **July 28, 2023**

The Defendant City of Philadelphia moves to dismiss Plaintiff Anthony Hughes's Complaint seeking relief under 42 U.S.C. § 1983 for his wrongful conviction and sentence. Because the Court finds parts of the Complaint fail to allege sufficient facts to support all of the claims raised, the motion to dismiss shall be granted in part and denied in part and Hughes shall be given leave to file an Amended Complaint against the City as to Counts I – III and V only.

**FACTUAL BACKGROUND**

On May 4, 1990, Hughes was convicted in the Philadelphia County Court of Common Pleas of first degree murder and possessing an instrument of crime. Compl. ¶ 5, ECF No. 1-5. Post-trial motions timely filed on May 10, 1990 were subsequently denied on October 3, 1991. *Id.* ¶¶ 7, 8. As the result of a docketing error, neither Hughes nor his counsel ever received notice of the denial of his post-trial motions and therefore the decision was never appealed. *Id.* ¶¶ 9, 10.

On December 10, 2010, Hughes filed a pro se petition under the Pennsylvania Post-Conviction Relief Act, 42 PA. CONS. STAT. § 9541, et. seq. ("PCRA") claiming ineffective assistance of counsel, *Brady* violations and deprivation of constitutional rights. *Id.* ¶ 11. Counsel was appointed to represent Hughes, and following the filing of an amended PCRA petition, Hughes

1

was granted a new trial on August 28, 2020. *Id.* ¶¶ 12, 13. Then, on September 11, 2020, Hughes waived his right to new trial and pled guilty to third-degree murder and possession of an instrument of crime. *Id.* ¶ 14. He was sentenced that same day to a maximum term of imprisonment of 25 years. *Id.* Because he had been incarcerated since his arrest on November 18, 1988, Hughes was entitled to credit for time served and was released on the same day of his guilty plea and sentence, having served seven years more than his maximum sentence under the plea. *Id.* ¶¶ 15, 16, 17.

Hughes brought this action in the Philadelphia County Court of Common Pleas in September 2022 by filing a Writ of Summons[1] against the City and "John Doe(s) I-XX individually and as Officers for the City of Phila." Writ 1-2, ECF No. 1-4. Hughes filed his Complaint on May 9, 2023, and the City removed the action to this Court on June 7. *See* Compl,. ECF No. 1-5. The Complaint contains six counts: the first four purport to state claims against the John Doe defendants individually and as officers for the City of Philadelphia under 42 U.S.C. § 1983 for malicious prosecution in violation of the Fourth and Fourteenth Amendments (Count I); deprivation of liberty without due process of law and denial of a fair trial (Count II); civil rights conspiracy (Count III); and failure to intervene (Count IV). Count V avers municipal liability under § 1983 against the City only, and Count VI asserts a state law malicious prosecution claim against the John Doe(s) individually and as officers for the City. The City seeks dismissal of the Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6).[2]

---

[1] Under Pennsylvania state practice, "[a]n action may be commenced by filing with the prothonotary: (1) a praecipe for a writ of summons, or (2) a complaint." Pa. R. C. P. 1007.

[2] While personal capacity suits seek to impose personal liability upon a government official for actions he or she takes under color of state law, official capacity suits "generally represent only another way of pleading a cause of action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "As long as the government entity receives notice and an opportunity to respond, an official capacity suit, is in all respects other than name, to be treated as a suit against the entity." *Id.* at 166. Given that Hughes has sued the John Doe Officers

**LEGAL STANDARDS**

To plead a claim for relief, a complaint must contain: (1) a short and plain statement of the grounds for the court's jurisdiction; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought. Fed. R. Civ. P. 8(a). To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In reviewing the complaint, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in the plaintiff's favor. *Pearson v. Sec'y. Dep't. of Corr.*, 775 F.3d 598, 604 (3d Cir. 2015). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal,* 556 U.S. at 678. In short, a court need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

**DISCUSSION**

To allege a cause of action under § 1983, a plaintiff must plead a deprivation of a constitutional right by a person acting under the color of state law. *Garrett v. Wexford Health*, 938 F.3d 69, 95 (3d Cir. 2019). By its terms, § 1983[3] creates no substantive rights, but merely provides

---

in their official capacities as well as in their individual capacities, the City is effectively a named defendant in all of the counts in Hughes's Complaint.

3   §1983 provides in relevant part:

remedies for deprivation of rights established elsewhere. *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). "The first step in evaluating a § 1983 claim is to identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (internal citations omitted). Next, a plaintiff must demonstrate the defendant was "personally involved in the wrongs alleged." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Chavarriaga*, 806 F. 3d at 222.

In Counts I and II of his Complaint, Hughes identifies the Fourth and Fourteenth Amendments[4] as the sources of the constitutional rights which the City and its John Doe officers

---

> Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable . . .

[4] Under the Fourth Amendment,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

And the Fourteenth Amendment states, in relevant part:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person

allegedly violated. The Fourteenth Amendment "incorporates" the protections of the Fourth Amendment such that the States are required to provide a fair and reliable determination of probable cause as a condition for any significant restraint of liberty. *Baker v. McCollan*, 443 U.S. 137, 142-43 (1979). Thus, the standards and procedures for arrest and detention, and the responsibility for protecting against unfounded invasions of liberty and privacy pursuant to the Fourth Amendment, are premised upon the existence of probable cause, "defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that [a] suspect had committed or was committing an offense.'" *Gerstein v. Pugh*, 420 U.S. 103, 111-112 (1975) (internal citations omitted).

Count I of Hughes's Complaint purports to state a claim under § 1983 for malicious prosecution in violation of the Fourth and Fourteenth Amendments whereas Count II seeks relief on the same bases for deprivation of liberty and denial of a fair trial. To make out a claim for malicious prosecution under § 1983 pursuant to the Fourth Amendment, a plaintiff must show: (1) the defendant initiated a criminal proceeding; (2) without probable cause; (3) the criminal proceeding ended in his favor; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007). "Malicious prosecution differs from false arrest inasmuch as 'a claim for false arrest, unlike a claim for malicious prosecution, covers damages only for the time of detention until the issuance of process or arraignment, and not more.'" *Id.* (internal citation

---

of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1.

omitted).[5]  For malicious prosecution, probable cause on one charge does not foreclose a malicious prosecution cause of action as to a separate charge which lacks probable cause.  *Alburg v. Jones*, No. 21-2580, 2023 U.S. App. LEXIS 8299 at *6 (3d Cir. Apr. 7, 2023) (citing *Harvard*, 973 F.3d at 199 n.3.  And a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show the criminal prosecution ended with some affirmative indication of innocence; a plaintiff need only show the criminal prosecution ended without a conviction or otherwise terminated in his favor.  *Thompson v. Clark*, 142 S. Ct. 1332, 1338, 1341 (2022).

      The Court finds Hughes fails to allege sufficient facts to plausibly state a claim on which relief may be granted in Count I of his Complaint for malicious prosecution.  For one, most of Hughes' allegations are formulaic recitations of the elements of this cause of action supported by naked factual assertions and legal conclusions.  Hughes does plead initiation of a criminal proceeding with respect to his May, 1990 state court conviction which resulted in the deprivation of his liberty and ended in his favor by its vacatur some twenty years later on collateral review in the state court.  But Hughes fails to plead the facts necessary to permit the inference to be drawn that the criminal proceedings against him were commenced maliciously and/or without probable cause.  Hughes only alleges that at the time of his trial, "information regarding the criminal history of key witness, Karla Burgess, was withheld" from him, and he was incarcerated from the date of his arrest on November 18, 1988 until September 11, 2020 (some two weeks after his PCRA petition was granted and he waived his right to new trial and pled guilty to the lesser charges).  Compl. ¶¶ 6, 14, 15, ECF No. 1-5.  In the absence of more facts regarding the who, what, when, where, why and how of the withholding of this information and how it affected the outcome of his

---

[5]    To bring a claim for false arrest, a plaintiff must establish: (1) that there was an arrest; and (2) the arrest was made without probable cause.  *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020); *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012).

trial, it is impossible to assess whether Hughes has a plausible claim to relief under this theory. Count I of the Complaint will therefore be dismissed but Hughes shall be given the opportunity to make the corrections necessary by filing an Amended Complaint.  *See* Fed. R. Civ. P. 15(a)(2).

In Count II of his Complaint, Hughes invokes § 1983 to obtain relief for deprivation of liberty without due process of law and denial of a fair trial.  "Though criminal convictions followed by imprisonment deprive defendants of their freedom, inmates nevertheless retain certain constitutionally protected property and liberty interests" through the Due Process Clause in the Fourteenth Amendment.  *Fantone v. Latini*, 780 F.3d 184, 185 (3d Cir. 2015).  Liberty interests may arise from two sources – the Due Process Clause itself and the laws of the States.  *Hewitt v. Helms*, 459 U.S. 460, 466 (1983) (internal citation omitted).  To state a claim under § 1983 for violation of the Due Process clause, a plaintiff must allege five things: (1) he was deprived of a protected liberty or property interest; (2) this deprivation was without due process; (3) the defendant subjected him or caused him to be subjected to this deprivation without due process; (4) the defendant was acting under color of state law; and (5) the plaintiff suffered injury as a result of the deprivation.  *Sample v. Diecks*, 885 F.2d 1099, 1113 (3d Cir. 1989).

Standard analysis under the Due Process Clause proceeds in two steps.  First, the Court asks whether there exists a liberty or property interest of which a person has been deprived. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).  If so, the Court asks whether the procedures followed by the State were constitutionally sufficient.  *Id.*  Accordingly, to state a § 1983 claim predicated on the right to a fair trial, a plaintiff must plead that the government's alleged pretrial misconduct resulted in an unfair trial. *Anderson v. Venango Cnty.*, 458 F. App'x 161, 164 (3d Cir. 2012).

As with his malicious prosecution claim, the gravamen of Hughes's due process claim alleges the Defendant John Doe Officers' alleged intentional withholding of unspecified "exculpatory evidence" which included "Brady material and information concerning the criminal history of key witness Kayla Burgess" resulting in his wrongful arrest, prosecution, conviction, and incarceration. Compl. ¶¶ 24, 26, ECF No. 1-5. Although Hughes's incarceration involved a protected liberty interest, these averments are nothing more than a formulaic recitation of the elements of a cause of action and naked assertions devoid of further factual enhancements which offer only labels and conclusions. Under *Twombly* and *Iqbal*, they fail to plead a viable cause of action under § 1983 for deprivation of Hughes's right to a fair trial and his liberty. The motion to dismiss shall also be granted with respect to Count II of the Complaint, but with leave to replead.

The City also moves to dismiss Count III, in which Hughes endeavors to raise a cause of action for Civil Rights Conspiracy. Of course, to properly plead an unconstitutional conspiracy under § 1983, a plaintiff must allege facts from which a conspiratorial agreement can be inferred. *Cromwell v. Fichter*, No. 22-3169, 2023 U.S. App. LEXIS 13357 at *4 (3d Cir. May 31, 2023) (citing *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010)). More particularly, a plaintiff must plead facts showing (1) the existence of a conspiracy, *i.e.*, an agreement or meeting of the minds to violate the constitutional or civil rights of another; and (2) a deprivation of those rights in furtherance of the conspiracy. *Thomas v. City of Phila.*, 290 F. Supp. 3d 371, 387 (E.D. Pa. 2018).

In Count III, Hughes alleges legal conclusions only:

> 28.   The Defendant Officers, acting within the scope of their employment and under color of state law, agreed among themselves and with other individuals to act in concert to deprive Plaintiff of his clearly established . . . rights to be free from unreasonable searches and seizures, false arrest, false imprisonment, . . . and to have a fair trial.

> 29. In furtherance of the conspiracy, Defendant Officers engaged in and facilitated numerous overt acts, including but not limited to, intentionally or with deliberate indifference failing to comply with their duty to disclose Brady and impeachment material during the pendency of the case."

Compl., ECF No. 1-5. Again, to survive dismissal pursuant to *Iqbal* and *Twombly*, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face;" a mere "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. Because Count III of the Complaint does not plead the requisite *facts* to support an inference that a conspiracy to violate Hughes's constitutional rights existed, it shall likewise be dismissed for failure to satisfy the *Twombly/Iqbal* threshold, but with leave to re-plead to correct the noted deficiencies.

Hughes next raises a claim under § 1983 against the John Doe Officers for failing to intervene on his behalf "to prevent his false arrest, malicious prosecution, false imprisonment and deprivation of liberty without due process of law." Compl. ¶32, ECF No. 1-5. While at least one other Circuit has extended failure-to-intervene liability from the context of excessive force to the context of false arrest or false imprisonment by holding an officer is liable "if he observes or has reason to know" of a false arrest and "a realistic opportunity to intervene," the Third Circuit has not done so to date. *Lozano v. N.J.*, 9 F.4th 239, 246 n.4 (3d Cir. 2021) (citing *Bunkley v. City of Detroit*, 902 F.3d 552, 565-66 (6th Cir. 2018)); *Weimer v. Cnty. of Fayette*, 972 F.3d 177, 191 (3d Cir. 2020); *Nesgoda v. Rooney*, Civ. No. 22-253, 2023 U.S. Dist. LEXIS 86461 at *15 (M.D. Pa. May 17, 2023). The Court therefore finds Count IV fails to state a viable claim for relief and is properly dismissed with prejudice.

In Count V, Hughes asserts a municipal liability claim against the City alone for his wrongful arrest and conviction. The principles governing such claims are well and firmly settled: there is no *respondeat superior* liability under § 1983 and hence a municipality cannot be held

liable solely because it employs a tortfeasor. *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, it is only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy inflicts the injury" that a governmental entity can be subject to liability under § 1983. *Id.* at 694. A policy is a decision of a city's "duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Reilly v. City of Harrisburg*, No. 22-1795, 2023 U.S. App. LEXIS 17259 at *4 (3d Cir. July 10, 2023) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403-04 (1997)). A custom exists when, although no policy has been formally approved by an appropriate authority figure, certain practices are so permanent and well settled as to have the force of law. *Id.* (quoting *Monell*, 436 U.S. at 691). Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*. *Tuttle*, 471 U.S. at 823-24.

For his claim against the City of Philadelphia, Hughes again provides nothing more than a formulaic recitation of the elements of a *Monell* cause of action:

> Defendant City, by and through its final policymakers, had in force and effect during the time of Plaintiff's wrongful arrest and conviction, and for many years preceding and following this investigation, a policy, practice or custom of unconstitutional misconduct in homicide and other criminal investigations, including in particular the withholding of exculpatory evidence and Brady evidence.

Compl. ¶ 36. ECF No. 1-5. The Court reaches the same conclusion with respect to the averments which Hughes puts forth in ¶ 37: "[f]inal policymakers for the City had actual or constructive notice of these practices, policies and customs but failed to make any meaningful investigation into charges that officers were withholding exculpatory Brady evidence" . . . "failed to take appropriate remedial and disciplinary actions," and "failed to train or supervise those who they knew or should have known were likely to . . . continue the policies, practices and customs of

10

unconstitutional police misconduct . . ." Without some well-pled facts showing how the purported policies, practices and customs of the City arose or how they caused Hughes to suffer harm, he fails to state a plausible cause of action pursuant to *Monell,* Thus Hughes's claim against the City alone must be dismissed. As with Counts I, II and III, however, Count V shall also be dismissed with leave to file an amended complaint.

Finally, the City also seeks dismissal of Count VI, a state law claim for malicious prosecution. In order to sustain a claim for malicious prosecution under Pennsylvania law, a plaintiff must plead and prove (1) the defendant instituted proceedings against him without probable cause, (2) with malice and (3) those proceedings were terminated in the plaintiff's favor. *Kelley v. General Teamsters, Chauffeurs, and Helpers, Local Union 249*, 544 A.2d 940, 941 (Pa. 1988). If probable cause is shown to exist, an absolute defense is established against an action for malicious prosecution and the prosecutor's motive, malicious or otherwise, is immaterial. *Turano v. Hunt*, 631 A.2d 822, 824 (Pa. Commw. Ct. 1993). As is evident, malicious prosecution under Pennsylvania state law mirrors the tort under federal law. Consequently, the Court finds Count VI suffers from the same deficiencies as Count I. Count VI is therefore dismissed with leave to replead against the John Doe Defendant officers in their individual capacities for the same reasons.

Insofar as Count VI endeavors to state a claim against the officers in their official capacities and therefore against the City of Philadelphia, however, it is dismissed with prejudice pursuant to the Pennsylvania Political Subdivision Tort Claims Act, 42 PA. CONS. STAT. § 8541, *et. seq.* As a general rule, the Act affords a broad grant of immunity[6] to municipal entities:

---

[6]   There are, however, several exceptions for certain acts of negligence. 42 PA. CONST. STAT. § 8542(a)(2). These apply in the areas of: (1) vehicle liability, (2) care, custody or control of personal property, (3) real property, (4) trees, traffic controls and street lighting, (5) utility service facilities, (6) streets, (7) sidewalks, and (8) care, custody or control of animals. 42 PA. CONS. STAT. § 8542(b)(1) – (8). Negligent acts do not include acts or conduct which constitutes a crime, actual

> Except as otherwise provided . . . no local agency shall be liable for any damages on account of any injury to a person or property caused any act of the local agency or an employee thereof or any other person.

*Id.*

A local agency is defined as "a government unit other than the Commonwealth government." *Id.* § 8501. The City of Philadelphia is a local agency within the meaning of the Tort Claims Act. *Canty v. City of Phila.*, 99 F. Supp. 2d 576, 582 (E.D. Pa. 2000). It is evident from the elements needed to succeed on a malicious prosecution claim that it is an intentional, not a negligent tort. *See Bristow v. Clevenger*, 80 F. Supp. 2d 421, 432 (M.D. Pa. 2000) ("Defendants are not protected by governmental immunity with respect to the intentional torts alleged, namely malicious prosecution, abuse of process, and false arrest") (citing *Lancie v. Giles*, 572 A.2d 827, 830 (Pa. Commw. Ct. 1990)). Because malicious prosecution does not fall within any of the exceptions to the broad grant of governmental immunity, amendment would be futile and Count VI shall be dismissed against the City with prejudice.

**CONCLUSION**

For all of the reasons set forth above, the City of Philadelphia's Motion to Dismiss the Plaintiff's Complaint is granted in its entirety. Hughes shall be given leave to file an Amended Complaint with respect to Counts I, II, III, V and VI with respect to the individual John Doe Defendants only. Count IV is dismissed with prejudice and Count VI is dismissed with prejudice with respect to the John Does in their official capacities. An appropriate Order follows.

---

malice or willfull misconduct. 42 PA. CONS. STAT. § 8542(a)(2). Conduct which constitutes sexual abuse under 42 PA. CONS. STAT. § 5551(7) is also an exception. 42 PA. CONS. STAT. § 8542(b)(9).

BY THE COURT:

/s/ Juan R. Sánchez
_____
Juan R. Sánchez,         C.J.

13